UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:25-cr-00061-JPH-TAB |
| ) | |
| ANTWAND WALLACE, ) | -01 |
| ) | |
| Defendant. ) | |

**ORDER DENYING MOTION TO SUPRESS**

Law enforcement officers applied for, received, and executed a search warrant for a house located at 1425 Herschell Drive, Indianapolis. Inside, officers seized drugs and related evidence and detained the defendant in this case, Antwand Wallace. A week later, officers applied for, received, and executed a search warrant for a buccal cell sample for Mr. Wallace's DNA.

Mr. Wallace has filed a motion to suppress both warrants. Dkt. [42]. For the house located at 1425 Herschell Drive, he argues that the lead investigator improperly presented his application for a search warrant to a state court magistrate judge rather than a federal magistrate judge and regardless, the search warrant wasn't valid because it was not supported by probable cause. For the buccal cell sample, Mr. Wallace argues that the warrant was executed after the state-court prosecution was dismissed, so it was no longer valid. For the reasons below, Mr. Wallace's motion to suppress is **DENIED**.

1

# I.
# Facts and Background

The following facts are taken from the undisputed evidence designated by the parties. *See* dkt. 42; dkt. 43; dkt. 46; *United States v. Dixon*, 137 F.4th 592, 604 (7th Cir. 2025) (explaining that evidence is required "to ensure a reliable determination of the facts underlying a motion to suppress").

In December 2024, United States Customs and Border Protection informed Homeland Security Investigations Special Agent Christopher Wolak about a suspicious package addressed to Antwand Wallace on Coyner Ave. in Indianapolis. Dkt. 43 at 3, 7 (Wolak search warrant affidavit). The next month, Special Agent Wolak was notified that Mr. Wallace had been sent a package addressed to 1425 Herschell Drive, Indianapolis, containing two kilograms of "READY MIX BINDER," which is commonly used in manufacturing fentanyl, methamphetamine, or fraudulent Xanax pills. *Id.* at 8. Two more similar packages were delivered to 1425 Herschell Drive in February 2025. *Id.*

Law enforcement officers also surveilled 1425 Herschell Drive on multiple days, watching "numerous individuals visit the house for short periods of time at all times, day and night." *Id.* at 14. "The visits [were] often quick" and in Special Agent Wolak's training and experience were "consistent with drug transactions." *Id.* Shortly after one such visit, Indianapolis Metropolitan Police officers conducted a traffic stop of an individual shortly after she left the house. *Id.* at 15–17. A search of the vehicle after a K-9 drug alert found a bag of colorful pills. *Id.* The driver agreed to cooperate with law enforcement and said

2

that she bought 500 pills from someone who used a phone number that law enforcement connected to Antwand Wallace.  *Id.*

Based on these facts and other information from the investigation, Special Agent Wolak sought a search warrant from the Marion County, Indiana Circuit Court for 1425 Herschell Drive.  *Id.* at 25.  The warrant application was submitted right before 6 p.m. on March 6, 2025, and a Marion County magistrate judge issued the warrant twenty minutes later.  *Id.* at 2.  That evening, the Indianapolis Metropolitan Police Department SWAT team executed the search warrant and found 1–2 pounds of multicolored pills, plastic baggies, a pill press, a pill counter, a digital scale, a handgun, firearm parts including several suppressors, and other gun and drug-related materials.  Dkt. 46-3 (IMPD search warrant report).  Officers also detained Mr. Wallace.  *Id.*

Mr. Wallace was initially charged in state court in Marion County.  *See* dkt. 46-2 at 4.  On March 13, 2025, Special Agent Wolak sought, and a Marion County magistrate judge issued, a search warrant for a buccal cell sample for Antwand Wallace's DNA.  *Id.*  The warrant was executed on March 17, 2025, shortly after the state charges were dismissed.  Dkt. 42-1 at 2; *see* dkt. 42 at 11.

On March 26, 2025, Mr. Wallace was indicted in this Court.  Dkt. 18. Mr. Wallace is charged with Count 1, possession with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine; Count 2, possession of a firearm in furtherance of a drug trafficking crime; and Count 3, unlawful possession of a firearm by a felon.

3

Dkt. 33 (superseding indictment). He has moved to "suppress both the warrant for DNA as well as the warrant for search of the Herschell residence." Dkt. 42 at 20.

## II.
## Applicable Law

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. To enforce this provision and to deter unlawful police conduct, the Supreme Court created the exclusionary rule, which "bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation." *Davis v. United States*, 564 U.S. 229, 231–32 (2011). However, the exclusionary rule applies only in instances "where its deterrence benefits outweigh its substantial social costs," and suppression of evidence is a "last resort" and not a "first impulse." *Utah v. Strieff*, 579 U.S. 232, 237–38 (2016). "Police practices trigger the harsh sanction of exclusion only when they are deliberate enough to yield 'meaningful' deterrence, and culpable enough to be 'worth the price paid by the justice system.'" *Davis*, 563 U.S. at 240.

## III.
## Discussion

### A. Search Warrant for 1425 Herschell Drive

Mr. Wallace challenges the search warrant for 1425 Herschell Drive, arguing that it was not supported by probable cause and was improperly issued by a state, rather than federal, magistrate judge. Dkt. 42 at 11–19. The

4

government responds that the state-court magistrate judge properly issued the warrant based on probable cause, and that the good faith exception does not support suppression regardless. Dkt. 46.

### 1. Probable Cause

"Probable cause is not a high standard. It simply means there is a reasonable likelihood evidence of wrongdoing will be found." *United States v. Schenck*, 3 F.4th 943, 946 (7th Cir. 2021). Federal courts give "great deference" to the probable-cause finding of the magistrate judge who issued the warrant. *United States v. Leonard*, 884 F.3d 730, 733 (7th Cir. 2018); *see Illinois v. Gates*, 462 U.S. 213, 236 (1983). That determination will be upheld "so long as there is substantial evidence in the record that supports the state judge's decision." *Leonard*, 884 F.3d at 733. "That substantial evidence must support the conclusion that there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Id.* The issuing judge—state or federal—"need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit." *Id.*

Here, Special Agent Wolak's affidavit identified three packages addressed to 1425 Herschell Drive that appeared to contain products commonly used to produce pills containing illegal drugs—with two of those packages successfully delivered to the Herschell residence. Dkt. 43 at 7–8. The affidavit further stated that law enforcement observed "numerous individuals visit [1425 Herschell Drive] for short periods of time at all times, day and night," over multiple days. *Id.* at 14. "The visits [were] often quick," and "consistent with

drug transactions." *Id.* Finally, the affidavit explains that in March 2025, Indianapolis Metropolitan Police officers pulled over a driver shortly after she left the Herschell residence and found a bag of colorful pills in her car. *Id.* at 15–17. The officer recognized the pills from his training and experience as likely being illegal drugs, such as MDMA or ecstasy; the pills were in plastic bags with torn corners; and K9 Jada alerted for the presence of narcotics. *Id.* at 16.

Mr. Wallace nevertheless argues that Special Agent Wolak did not have probable cause and "at most, had a reasonable suspicion that drug trafficking activity may be afoot." Dkt. 42 at 14–16. He contends that the driver in the March 2025 traffic stop did not "confirm[ ] the residence where she bought the pills" and that "but for the mailings, there was no specific evidence submitted within the affidavit connecting the Defendant with the Herschell address." *Id.* The government responds that Special Agent Wolak's affidavit establishes probable cause by setting "forth facts sufficient to induce a reasonable prudent person to believe that a search thereof will uncover evidence of a crime." Dkt. 46 at 12–13 (quoting *United States v. Jones*, 208 F.3d 603, 608 (7th Cir. 2000)).

Because the search warrant was for 1425 Herschell Drive, the affidavit didn't need to connect Mr. Wallace to the address—probable cause to believe that the address contained "evidence of a crime" is enough. *Jones*, 208 F.3d at 608; *accord United States v. Zamudio*, 909 F.3d 172, 175–76 (7th Cir. 2018) ("[A]n affidavit submitted in support of a warrant application need only contain facts that, given the nature of the evidence sought and the crime alleged, allow

6

for a reasonable inference that there is a fair probability that evidence will be found *in a particular place.*" (emphasis added)).  Here, the probable-cause finding was amply supported by the three suspicious packages; surveillance of high-volume foot traffic in and out of the residence; and the pills found during the March 2025 traffic stop after the car left the Herschell residence.  Dkt. 42 at 15–16; *see United States v. Haynes*, 882 F.3d 662, 666 (7th Cir. 2018) (law enforcement surveillance and a controlled buy established probable cause to believe "that the house contained evidence of illegal activity").  In his Affidavit, Special Agent Wolak states that he watched that car arrive at the Herschell residence; watched its driver enter that residence and then quickly leave; and followed the car until the traffic stop.  Dkt. 43 at 15–16.[1]

In sum, given Special Agent Wolak's "firsthand observations and . . . corroborating information, the issuing judge was justified in concluding that there was probable cause for a search" of 1425 Herschell Drive.  *United States v. Maxwell*, 143 F.4th 844, 854 (7th Cir. 2025).

### 2. Federal Rule of Criminal Procedure 41 and the Good Faith Principle

Mr. Wallace separately challenges the warrant as improperly issued by a state, rather than federal, magistrate judge under Federal Rule of Criminal

---

[1] Because of Special Agent Wolak's firsthand observations and the pills found in the vehicle search after the traffic stop, the evidence supports probable cause even if Mr. Wallace is correct that the driver's statements to law enforcement are inconsistent and unreliable.  *See* dkt. 42 at 15–16.  Moreover, the driver's statements about the person she was texting and whether that person was Mr. Wallace are, at most, tangential to the probable cause analysis because the search warrant affidavit had to connect drugs to only the place to be searched—1425 Herschell Drive—and not to Mr. Wallace himself.  *See Jones*, 208 F.3d at 608.

Procedure 41(b).  Dkt. 42 at 11–14.  Under that rule, "[a]t the request of a federal law enforcement officer . . . a magistrate judge with authority in the district—or if none is reasonably available, a judge of a state court of record in the district—has authority to issue a warrant to search for and seize a person or property located within the district."  Fed. R. Crim. P. 41(b)(1); *see United States v. Berkos*, 543 F.3d 392, 396–98 (7th Cir. 2008).

Mr. Wallace argues that Special Agent Wolak violated Rule 41(b) by seeking a warrant from a state-court magistrate judge "because it was easier," rather than because no federal magistrate judge was reasonably available.  Dkt. 42 at 13.  The government responds that Rule 41 does not apply because Special Agent Wolak sought a state, rather than federal, warrant and that regardless the good-faith exception makes suppression improper.  Dkt. 46 at 2–7.

The Seventh Circuit has not addressed whether Rule 41(b) requires a federal agent to seek a warrant from a federal magistrate judge when there is no showing that none was reasonably available.  But it has held that, even when Rule 41 may have been violated, "[s]uppression of evidence is a 'last resort.'"  *United States v. Kienast*, 907 F.3d 522, 527–28 (7th Cir. 2018) (Barrett, J.) (quoting *Hudson v. Michigan*, 547 U.S. 586, 591 (2006)).  Indeed, under the good-faith principle, "exclusion is not appropriate where the police act with an objectively reasonable good-faith belief that their conduct is lawful."  *Id.*  That's particularly true for "violation[s] of statutory requirements that go beyond the Constitution's demands," *United States v. Cazares–Olivas*, 515 F.3d

8

726, 730 (7th Cir. 2008), making suppression rarely appropriate for a Rule 41 violation, *United States v. Berkos*, 543 F.3d 392, 396 (7th Cir. 2008) ("This Court has held that "violations of federal rules do not justify the exclusion of evidence that has been seized on the basis of probable cause and with advance judicial approval.'").

Accordingly, in three recent cases involving Rule 41 challenges, the Seventh Circuit held that suppression was inappropriate under the good-faith principle while "tak[ing] no position on the merits of the underlying Rule 41(b)" question. *United States v. Dorosheff*, 110 F.4th 999, 1003 (7th Cir. 2024) (explaining the common approach of all three cases); *United States v. Grisanti*, 943 F.3d 1044 (7th Cir. 2019); *Kienast*, 907 F.3d at 527–28. In those cases, an Eastern District of Virginia magistrate judge issued a warrant authorizing a "Network Investigative Technique" to identify a website's users. *Grisanti*, 943 F.3d at 1047. But not all the users were in Virginia, and Rule 41 at that time authorized a warrant only for persons or property within the magistrate judge's district. *See Kienast*, 907 F.3d at 527. In each case, the Seventh Circuit rejected suppression because "the legal issues surrounding Rule 41(b) were complex and unsettled" at the time of the warrant application, "so the agents involved acted reasonably." *Dorosheff*, 110 F.4th at 1004. In that situation, the "remedy of allowing a defendant to go free based on a violation of Rule 41's requirements for obtaining a proper search warrant would be wildly out of proportion to the wrong." *Berkos*, 543 F.3d at 396 (cited in *Kienast*, 907 F.3d at 528).

The same is true here.  The Rule 41 issue that Mr. Wallace raises is similarly unsettled, supporting application of the good faith principle.  The Seventh Circuit has not held that agents in Special Agent Wolak's situation are required to seek a warrant from a federal magistrate judge, and other circuits do not agree on the proper test.  *E.g. United States v. Duval*, 742 F.3d 246, 254 (6th Cir. 2014) (Agents "working on issues of mutual concern" to federal and state authorities have "flexibility" to "go State or Federal with an investigation.")[2]; *United States v. Golson*, 743 F.3d 44, 51–52 (3d Cir. 2014) ("Rule 41(b) will apply, by its own terms, to a search warrant made at the request of a federal law enforcement officer."); *United States v. Claridy*, 601 F.3d 276, 281–84 (4th Cir. 2010) ("Rule 41's application must hinge on whether the *proceeding*, as distinct from the investigation, was federal.").

Mr. Wallace argues that Special Agent Wolak intentionally sought the warrant from a state-court magistrate judge because he believed "that it would take several days to secure a warrant from a federal magistrate" and that "it was easier to get a warrant" from a state-court magistrate judge.  Dkt. 42 at 12–13.  Regardless of why Special Agent Wolak decided to seek a warrant from a state court magistrate judge, Mr. Wallace cannot show that Special Agent Wolak "was dishonest or reckless."  *Kienast*, 907 F.3d at 529.  And "[i]n

---

[2] The evidence here reveals significant involvement form state law-enforcement officers, who conducted the March 2025 traffic stop and resulting interview, dkt. 43 at 15–16, and executed the search warrant, dkt. 46-3.  Moreover, Special Agent Wolak's affidavit alleges a violation of Indiana Code 35-48-4-1 (dealing in controlled substance), dkt. 43 at 17, and Mr. Wallace was initially charged in Indiana state court, dkt. 42 at 11.

the absence of culpable police conduct, the exclusionary rule cannot 'pay its way.'" *Id.* The warrant was supported by probable cause and "violations of federal rules" that go beyond the Constitution's demands "do not justify the exclusion of evidence that has been seized on the basis of probable cause and with advance judicial approval." *Berkos*, 543 F.3d at 396; *see Claridy*, 601 F.3d at 283–84 (holding that alleged Rule 41(b) violation "would not justify suppression of the evidence seized under the warrant" because any violation was "nonconstitutional and nonprejudical" with no "evidence that the purported violations were an intentional and deliberate effort to disregard or circumvent Rule 41").

The good-faith principle therefore applies here and Mr. Wallace's motion to suppress the search warrant for 1425 Herschell Drive is denied.[3]

### B. Search Warrant for DNA

Mr. Wallace argues that the state warrant for his DNA "automatically extinguished" when the state charges against him were dropped before the warrant was executed. Dkt. 42 at 11–12. The government responds that a warrant is not required and regardless, "the United States plans to seek

---

[3] No evidentiary hearing is required to reach this conclusion. *See United States v. Juarez*, 454 F.3d 717, 719–20 (7th Cir. 2006) (finding no evidentiary hearing required on suppression motion unless defendant "provide[s] sufficient information to enable the court to conclude that a substantial claim is presented and that there are disputed issues of material fact which will affect the outcome of the motion"). Probable cause is established on the face of Special Agent Wolak's affidavit, and Mr. Wallace's Rule 41 argument is legal rather than factual. *United States v. Edgeworth*, 889 F.3d 350, 353 (7th Cir. 2018) (An evidentiary hearing is required "only when a substantial claim is presented and there are disputed issues of material fact that will affect the outcome of the motion."). Mr. Wallace's motion for hearing is therefore **DENIED**. Dkt. [50].

another (federal) warrant to re-swab Mr. Wallace and collect his DNA." Dkt. 46 at 11. If the government conducts another swab to collect Mr. Wallace's DNA, the challenge to the results from the March 17 swab authorized by the Marion County Magistrate Judge will likely become moot. The Court therefore **orders the government to provide** a status update on this issue **by September 19, 2025**. Mr. Wallace **shall respond by October 3, 2025** whether his challenge to the March 2025 swab for his DNA is moot.[4]

## IV.
## Conclusion

Mr. Wallace's motion to suppress is **DENIED**. Dkt. [42].

**SO ORDERED.**

Date: 9/11/2025

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel

---

[4] Mr. Wallace argues that the government should be prohibited from seeking another warrant for his DNA for "acting in bad faith," but he cites no authority in support and does not contest that the warrant was properly obtained under Indiana law while his state charges were still pending. Dkt. 42 at 10–11 (acknowledging that Indiana state law "permits collection of DNA based on a felony arrest"); dkt. 47 at 2.